**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROTEM ROSEN,<br><br>            Plaintiff/Counter Defendant,<br><br>            v.<br><br>ALEX SAPIR and 260-261 MADISON AVENUE JUNIOR MEZZANINE LLC,<br><br>            Defendants/Counter Claimants. | No. 20-CV-5844 (RA) (JLC)<br><br>**AMENDED COMPLAINT** |

Plaintiff Rotem Rosen ("Plaintiff" or "Rosen"), by and through his undersigned counsel, as and for his complaint against defendants Alex Sapir ("Sapir") and 260-261 Madison Avenue Junior Mezzanine LLC ("260-261 Madison" or "Guarantor," and together with Sapir, "Defendants"), respectfully alleges on knowledge as to himself and his own actions, and on information and belief as to all other matters, as follows:

**PRELIMINARY STATEMENT**

1.    Plaintiff brings this action for breach of an unconditional promissory note and an absolute, unconditional and irrevocable payment and performance guaranty, as well as a declaration that one or more events of default exists under the promissory note and the guaranty by Sapir and 260-261 Madison (defaults which Sapir has acted to conceal).

2.    Rosen therefore seeks judgment on the promissory note and the guaranty; declaratory judgment establishing that Sapir has defaulted on his obligations under a promissory note in favor of Plaintiff, with all the consequences that such a default entails; damages for Sapir's violation of the implied covenant of good faith and fair dealing; and an order requiring Sapir to disclose the information he has improperly withheld from Rosen.

3. Sapir became indebted to Rosen as a result of a mutual decision to separate certain jointly held assets in 2017 and in 2018. Sapir and Rosen memorialized their agreement to separate in a binding letter of intent dated June 21, 2017, as amended on July 21 2017 (the "Binding LOI") (attached as Exhibit A).

4. Under the Letter of Intent, and related promissory note executed by Sapir as of March 8, 2018 (the "Promissory Note," attached as Exhibit B), Sapir purchased Rosen's 50% interest in certain assets which were jointly held by Rosen and Sapir through their joint ventures for a total of $75,456,308 (the "Purchase Price"), plus additional consideration. As part of the Binding LOI, Sapir agreed to pay $15 million of the Purchase Price at closing, and agreed to pay the remainder of the Purchase Price (or $60,456,308) in accordance with the terms of the Promissory Note. Specifically, $5 million on or before April 30, 2018, followed by 14 equal consecutive installments of $3,961,164.86, on or before April 30 of each year, beginning on April 30, 2019.

5. The Promissory Note and Binding LOI set forth certain events of default, in the event of which the full outstanding amount of the promissory note would immediately become due and payable, along with interest and certain other sums.

6. Sapir's debt to Rosen under the Binding LOI and Promissory Note was also guaranteed by 260-261 Madison, a company formerly owned by Rosen and Sapir's joint venture, pursuant to a guaranty dated March 8, 2018 (the "Guaranty," attached as Exhibit C). Moreover, Sapir swore an affidavit of judgment by confession, dated March 5, 2018 (the "Confession of Judgment"), with respect to the debt.

7. Under the Binding LOI and Promissory Note, the parties explicitly contracted that, in the event that Sapir were to engage in refinancing of a debt and/or line of credit debt on

commercial real properties indirectly owned by 260-261 Madison and/or on the ownership structure of those real properties above a certain threshold, the full amount of the outstanding debt would immediately become due and payable.

8. The inclusion of that provision was of central importance to Rosen, who was and remains a co-guarantor of a mortgage on those properties, and therefore seeks to avoid those properties becoming excessively leveraged.

9. Nonetheless, in June 2020, Rosen learned that Sapir had indeed, three months earlier, refinanced the mezzanine line of credit debt on those properties, likely resulting in an event of default.

10. On no fewer than three occasions over the course of three weeks, counsel for Rosen wrote to Sapir requesting disclosure of the precise circumstances of the apparent event of default.

11. Each time, Sapir refused to disclose what happened, and simply offered vague and evasive denials that an event of default had occurred.

12. The parties to the Binding LOI and Promissory Note also contracted that, in the event that there were "a sale or change in ownership or ownership structure of" 260-261 Madison, its subsidiaries (260-261 Madison Avenue Mezzanine LLC and 260-261 Madison Avenue LLC), or the properties those entities owned at 260 and 261 Madison Avenue, New York, NY, the full amount of the outstanding debt would immediately become due and payable.

13. The inclusion of that provision was essential to protect Rosen, who remains financially exposed to those assets as a co-guarantor of a $231 million securitized mortgage, and, among other things, wanted to protect the direct ownership structure and control of his Guarantor, defendant 260-261-Madison.

14. Notwithstanding that strict and clear provision, on November 18, 2021, Rosen

learned through a declaration that Sapir filed in this Action that Sapir had breached that obligation on the very day the transactions under the Binding LOI were consummated.

15. Rosen therefore brings this action seeking to vindicate his right to payment in full under the Binding LOI, Promissory Note and Guaranty, of the outstanding debt and accrued interest. Moreover, by refusing to provide any information about the refinancing in an apparent attempt to conceal his default, Sapir violated the covenant of good faith and fair dealing implied into every contract governed by New York law, and he is therefore liable for damages.

## PARTIES

16. Plaintiff Rotem Rosen is an individual who resides in New York, New York. Rosen is a property developer and a prominent figure in the real estate development and wider business community both in the United States and in Israel.

17. Defendant Alex Sapir is an individual who resides in Miami Beach, Florida.

18. Defendant 260-261 Madison Avenue Junior Mezzanine LLC is a Delaware Limited Liability Company. 260-261 Madison's members are Alex Sapir personally, and Dimitri Barinstein, as trustee for three common law trusts established for the benefit of Alex Sapir, Zina Sapir, and Ruth Sapir. Upon information and belief, Mr. Barinstein resides in London, England.

## JURISDICTION AND VENUE

19. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as Plaintiff is domiciled in New York, Sapir is domiciled in Florida, 260-261 Madison is a Delaware Limited Liability Company whose ultimate owners are domiciled in Florida and the United Kingdom, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

20. Personal jurisdiction is also established by agreement. Under Section 26 of the

Promissory Note, Sapir explicitly "submit[ted] to personal jurisdiction in the State of New York over any suit, action or proceeding by any person arising from or relating to this Note." Under Section 14(b) of the Guaranty, 260-261 Madison explicitly "submit[ted] to personal jurisdiction in the State of New York in any action or proceeding arising out of this Guaranty."

21. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## FACTS

### I. Background

22. Sapir's debt to Rosen arises from the separation and sale of certain assets previously held equally and jointly through business ventures.

23. Rosen and Sapir were formerly equal partners in a number of business entities engaged in commercial real estate investing and various other enterprises. Those business entities included ASRR LLC, a New York limited liability company, ASRR Management LLC, a New York limited liability company, ASRR Construction LLC, a New York limited liability company, ASRR International LLC, a Florida limited liability company, ASRR Global Corp., a Florida corporation, and ASRR Capital Ltd., an Israeli company listed on the Tel Aviv Stock Exchange.

24. One of the key assets of the partnership was a 100% of the controlling class ("Class B Shares") membership interest in another entity, Defendant 260-261 Madison, which (in conjunction with certain other subsidiaries), owns two large office buildings in midtown Manhattan, 260 Madison Avenue and 261 Madison Avenue (collectively, the "260-261 Madison Real Property").

### II. The Contractual Provisions at Issue

25. In 2017, Rosen and Sapir elected to part ways. To separate their holdings in assets equally and jointly held through their partnership joint ventures, Sapir offered to purchase all of

Rosen's interest in the joint businesses pursuant to the terms of the Letter of Intent and other transaction documents, for a total of $75,456,308 (the "Purchase Price") and additional consideration.

26. Under the Binding LOI, Sapir would make an initial payment at closing of $15 million, and then pay the rest of the Purchase Price in a series of installments ending in 2032. This obligation was affirmed and restated in the $60,456,308 Promissory Note, which was issued by Sapir on March 8, 2018. Sapir's payment and performance obligations under the Binding LOI and Promissory Note was guaranteed by 260-261 Madison under the terms of the Guaranty. Additionally, as a further means of security on the debt, Sapir swore the Confession of Judgment, authorizing judgment against him in the event that he were to default on the Promissory Note. As of May 1, 2021, there was approximately $43,572,813 of the Purchase Price as yet unpaid on the Promissory Note.

27. The Binding LOI and Promissory Note also provide, however, that upon the occurrence of certain defined events of default, and upon notice from Rosen thereof, "all of the unpaid Purchase Price [] and all other amounts owing or payable" under the Promissory Note would become immediately due and payable. In addition, the Letter of Intent provides that Rosen is entitled to interest on any unpaid accelerated portion of the Purchase Price at a rate of 10% per annum, compounded monthly, from the date of an event of default.

### *The Refinancing Default Provision*

28. One event of default under the Binding LOI concerns the indebtedness and the line of credit secured indirectly by the 260-261 Madison Real Property. The Line of Credit was provided by Bank Leumi USA ("Bank Leumi"), and had a maximum limit of $30 million. Under the Binding LOI, "a refinancing of indebtedness and/or line of credit on the [260-261] Madison

Real Property in an aggregate amount that exceeds the aggregate outstanding principal amount of the existing indebtedness and line of credit as of [June 21, 2017] that is being refinanced, together with any interest which is accrued and/or capitalized therein, by more than $500,000," gives rise to a right of acceleration on the part of Rosen. *Id.*, ¶ 3(e)(ii) (hereinafter, a "Refinancing Default"). As of the date of the Binding LOI, the line of credit facility, provided by Bank Leumi, had a total outstanding amount of approximately $17,200,000.

29. As noted above, Rosen viewed that provision as highly essential to protect his position as a co-guarantor of a mortgage on the 260-261 Madison Real Property. Any increase in the actual or potential indebtedness of the 260-261 Madison Real Property poses a threat to Rosen.

30. The Refinancing Default provision is incorporated by reference into the Promissory Note issued by Sapir, which provides that "the occurrence of any of the events enumerated in paragraph 3(e) of the [Letter of Intent]" constitutes an event of default under the Promissory Note. The Promissory Note further provides that "[i]t is hereby expressly agreed that the entire Debt shall become immediately due and payable at the option of Payee on the happening of any Event of Default." The Promissory Note also provides for 10% interest *per annum*, compounded monthly, on any unpaid amounts due and owing to Rosen after an Event of Default.

### *The Change of Ownership Default Provision*

31. Another event of default under Paragraph 3(e)(i) the Letter of Intent is the occurrence of "a sale *or* change in ownership *or* ownership structure of 260 Madison Holdings [which is defined as including Defendant 260-261 Madison] and/or the underlying real property assets [the 260-261 Madison Real Property]" (emphasis added) (hereinafter, a "Change of Ownership Default").

32. Like the Refinancing Default provision, the Change of Ownership Default

provision is highly essential to, among other things, protect Rosen's position as a co-guarantor of a mortgage on the 260-261 Madison Real Property, and protect the control and ownership structure of the Guarantor.

33. Prior to the separation, 100% of the controlling Class B Shares in 260-261 Madison were owned by ASRR LLC.

34. On the closing date of March 8, 2018, pursuant to the Binding LOI, ASRR LLC's 100% holding of controlling Class B Shares in 260-261 Madison was first distributed, 50% each to Rosen and Sapir individually, with Rosen then immediately assigning his 50% to Sapir, through the latter's wholly-owned limited liability company, 260-261 Madison II LLC.

35. This transaction, in addition to all the other transactions consummated pursuant to the Binding LOI, was memorialized in a letter from Sapir to Rosen, dated March 8, 2018, which was countersigned by Rosen and 260-261 Madison, with the subject line "Re: Detailed description of the Transactions being consummated pursuant to that certain Binding LOI (defined below) and additional obligations relating thereto" (hereinafter, the "Transactions Description Letter Agreement").

36. As a result of the separation envisioned by the Binding LOI, Sapir became (individually and through his wholly-owned entity, 260-261 Madison II LLC), owner of 100% of the Class B Shares in 260-261 Madison.

37. As the events of default in Section 3(e) are incorporated by reference into the Promissory Note, a Change of Ownership Default Provision constitutes an non-curable event of default under the Promissory Note, resulting in the full amount of Sapir's debt becoming "immediately due and payable at the option of Payee," along with 10% interest *per annum*, compounded monthly.

*The Guaranty*

38.     Sapir's payment and performance obligations under the Binding LOI and the Promissory Note were guaranteed by a company formerly owned by Rosen and Sapir's joint venture, 260-261 Madison, pursuant to the Guaranty.  More specifically, the Guaranty provides that 260-261 Madison "absolutely, unconditionally, and irrevocably undertakes and guaranties" the punctual payment and performance of all of Sapir's obligations under the Binding LOI and Promissory Note when due, "whether at stated maturity, any extended maturity, or by acceleration or otherwise."

39.     Section 10 of the Guaranty further provides that:

> [T]his Guaranty and the obligations of the Guarantor under this Guaranty are and shall at all times continue to be absolute and unconditional in all respects, and shall at all times be valid and enforceable irrespective of any other agreements or circumstances of any nature whatsoever which might otherwise constitute a defense to this Guaranty[.]
>
>  . . .
>
> [260-261 Madison] represents, warrants, and agrees that the Guarantied Obligations are not subject to any offset or defense against Payee of any kind and the Guarantor absolutely, unconditionally and irrevocably waives any and all right to assert any defense, setoff, counterclaim or cross claim of any nature whatsoever with respect to this Guaranty or the obligations of the Guarantor under this Guaranty or the obligations of any other person or party [] relating to this Guaranty or otherwise with respect to the Guarantied Obligations, or in any action or proceeding brought by Payee to collect the Guarantied Obligations, or any portion thereof or to enforce the obligations of the Guarantor under this Guaranty.  The Guarantor acknowledges that no oral or other agreements, understandings, representations or warranties exist with respect to this Guaranty or with respect to the obligations of the Guarantor under this Guaranty, except those specifically set forth in this Guaranty.

40.     Under the Guaranty, 260-261 Madison explicitly waived its rights to notice and to

demands for payment under the Guaranty.

41. Finally, the Promissory Note provides for Sapir to reimburse Rosen for "all out-of-pocket costs of collection actually incurred, including reasonable attorneys' fees and disbursements" in connection with the collection of an amount due thereunder or any portion thereof; the Guaranty has a similarly-worded provision. The Binding LOI and Mutual Release also have provisions allowing the prevailing party to recover reasonable attorney fees and costs in case of litigation.

### III. The Refinancing Default

42. On March 13, 2020, as part of a refinancing transaction, Bank Leumi assigned its security interest over the 260-261 Madison Real Property to an entity named CMTG Lender 69 LLC. Six days later, the security interest was further assigned to an entity named MREF REIT Lender 16 LLC.

43. Concurrent with those assignments, 260-261 Madison Avenue Mezzanine LLC (a wholly-owned subsidiary of 260-261 Madison and co-owner of the 260-261 Madison Real Property) entered into Amended and Restated Mezzanine Pledge and Security Agreements, with both CMTG Lender 69 LLC and MREF REIT Lender 16 LLC.

44. On information and belief, those Amended and Restated Mezzanine Pledge and Security Agreements changed the interest rate and extended the maturity date of the credit facility that 260-261 Madison Avenue Mezzanine LLC previously had with Bank Leumi.

45. In June of 2020, Rosen learned of the refinancing of the 260-261 Madison Real Property from publicly-available UCC filings (see Exhibit D, attached).

46. On July 1, 2020, counsel for Rosen sent a letter to Sapir (attached as Exhibit E), requesting information concerning the quantum of debt undertaken by Defendants under the new

credit facility so as to "assist [Rosen] in determining whether an Event of Default has occurred."

47. Counsel for Sapir responded with a letter dated July 7, 2020 (attached as Exhibit F), denying (without any explanation) that there had been an event of default and asserting that Sapir "has no obligation under the [Binding LOI], the Promissory Note, or otherwise to provide Rotem Rosen [] with the documents demanded in the Letter."

48. Counsel for Rosen replied by letter dated July 10, 2020 (attached as Exhibit G), requesting that Sapir provide the previously requested information -- under a confidentiality agreement, or even on an "attorneys' eyes only" basis -- by no later than July 15, 2020.

49. On July 15, 2020, counsel for Sapir responded (attached as Exhibit H), again stating in conclusory fashion that "no event of default has occurred," and reiterating that "Rosen has no right . . . to obtain the documents demanded from our client."

50. Counsel for Rosen wrote to counsel for Sapir once more, on July 16, 2020 (attached as Exhibit I), noting that a refinancing had clearly taken place, and asking for a simple yes or no answer as to whether the amount refinanced was greater than the threshold triggering an event of default under the Binding LOI and Promissory Note, *i.e.*, $17,700,000.

51. On July 17, 2020, counsel for Sapir responded with a final letter (attached as Exhibit J), again summarily denying that there was an event of default and refusing to provide any information on the refinancing.

52. Counsel for Sapir's refusal to answer a simple yes and no question effectively confirmed that the amount refinanced was greater than $17,700,000.

53. On information and belief, the total indebtedness under the new credit facility exceeded the aggregate outstanding principal amount of the indebtedness and line of credit on the 260-261 Madison Real Property as of the date of the Binding LOI by more than $500,000, and

therefore constituted a Refinancing Default under the Binding LOI and Promissory Note.

54. On information and belief, Sapir refused to provide the information requested by Rosen in order to conceal Sapir's Refinancing Default, and thereby frustrate Rosen's enforcement of his rights under the Binding LOI, Promissory Note and Guaranty.

### IV. *The Change of Ownership Default*

55. On November 18, 2021, Defendants filed, together with their opposition to Plaintiff's motion to dismiss Defendants' counterclaims, a declaration submitted under penalty of perjury by Sapir (the "Sapir Declaration" is attached as Exhibit K).

56. One document attached to the Sapir Declaration as Exhibit 8 is a document described by Sapir (at Paragraph 10 of the Sapir Declaration) as "a copy of the organizational chart of the entities that had a direct and/or indirect interest in the property located at 260-261 Madison Avenue, New York, NY, as of March 8, 2018." (Hereinafter, the "Organizational Chart," attached hereto as Exhibit L). At Paragraph 13 of the Sapir Declaration, Sapir states, "I declare under penalty of perjury that the foregoing is true and correct."

57. The Organizational Chart clearly indicates that, as of March 8, 2021, the very same day Rosen and Sapir consummated the transactions of the Binding LOI which resulted, among other things, in Sapir becoming the sole owner of 100 percent of the Class B Shares in 260-261 Madison, unbeknown to Rosen, and in direct contravention of Sapir's undertaking in the Binding LOI and the Promissory Note, Sapir transferred 12.5 percent of the Class B Shares in 260-261 Madison to a purported trust for the benefit of his sister, Ruth Sapir.

58. The Organizational Chart constitutes a sworn judicial admission that Sapir transferred 12.5% of the Class B Shares to a purported trust for the benefit of his sister, Ruth Sapir, thus committing a "sale or change in ownership or ownership structure… of 260-261 Madison."

59. Thus Sapir committed a Change of Ownership Default under Section 3(e)(i) of the Binding LOI and Paragraph 11(a) of the Promissory Note. The occurrence of a Change of Ownership Default under Section 3(e)(i) of the Binding LOI constitutes an immediate, non-curable event of default.

60. Rosen was unaware of the Change of Ownership Default until receiving the Sapir Declaration on November 18, 2021, despite the Change of Ownership Default having occurred more than three and a half years previously.

61. On November 23, 2021, Rosen's counsel served Sapir – as maker of the Promissory Note – and 260-261 Madison – as guarantor under the Guaranty – with a notice of the event of default, seeking payment of the full unpaid amount of the Purchase Price under the Promissory Note together with interest (the notice of default is attached as Exhibit M.)

62. On December 6, 2021, counsel for Defendants responded with a letter containing a blanket denial that Rosen had committed an event of default, and refusing to pay under the Promissory Note. The entire text of the letter stated: "In connection with the above-referenced matter, we write in response your firm's letter dated November 23, 2021 (the "Letter"). Rotem Rosen's declaration of default is rejected because there has been no event of default under the Promissory Note or Binding LOI. The foregoing is written without prejudice to our client's rights, whether legal or equitable, all of which are expressly reserved" (the letter is attached as Exhibit N.)

**FIRST CAUSE OF ACTION**
**Declaratory Judgment Against Sapir and 260-261 Madison**

63. Plaintiff repeats all of the foregoing allegations as if fully set forth herein.

64. A Change of Ownership Default under Section 3(e)(i) of the Binding LOI and a Refinancing Default under Paragraph 3(e)(ii) of the Binding LOI have occurred, each of which in

turn constitutes a non-curable Event of Default under Section 11(a) of the Promissory Note.

65.     Because one or more Events of Default have occurred, the full unpaid amount of the Purchase Price is accelerated and immediately becomes due, in addition to interest and certain other amounts.

66.     Additionally, acceleration under the Binding LOI and/or the Promissory Note gives Rosen the right to seek payment of the full unpaid amount of the Purchase Price, in addition to interest and certain other amounts, under the Guaranty.

67.     Defendant Sapir has denied that an Event of Default under the Binding LOI and Promissory Note has occurred.

68.     A justiciable, present and actual controversy thus exists between Plaintiff and Defendant Sapir as to whether an Event of Default has occurred under the Binding LOI and Promissory Note.

69.     Plaintiff is entitled to a judgment declaring that one or more Events of Default have occurred under the Binding LOI and Promissory Note, and is entitled to payment of the full accelerated unpaid portion of the Purchase Price from Sapir under the Binding LOI and Promissory Note, and from 260-261 Madison under the Guaranty, in addition to costs, interest, expenses, and attorneys' fees, as provided for in both the Promissory Note and Guaranty.

**SECOND CAUSE OF ACTION**
**Breach of Promissory Note Against Sapir**

70.     Plaintiff repeats all of the foregoing allegations as if fully set forth herein.

71.     The Promissory Note constitutes a valid, absolute and unconditional obligation on the part of Sapir.

72.     A Change of Ownership Default under Section 3(e) of the Binding LOI occurred on March 8, 2018, which in turn constitutes a Change of Ownership Default under Section 11(a)

of the Promissory Note.

73.     Because a Change of Ownership Default has occurred, the full unpaid amount of the Purchase Price is accelerated and immediately becomes due, in addition to interest and certain other amounts.

74.     On November 23, 2021, Rosen's counsel served Sapir with a notice of default in accordance with the terms of the Promissory Note, seeking payment of the full amount of the Promissory Note together with interest.

75.     On December 6, 2021, counsel for Sapir refused to make the required payment under the Promissory Note.

76.     Rosen is entitled to judgment in the amount of $43,572,813 plus interest at a rate of 10% per annum, compounded monthly, from the date of default, which is March 8, 2018, as well as Rosen's out-of-pocket costs of collection, including but not limited to attorneys' fees and disbursements, in accordance with Section 9 of the Promissory Note.

**THIRD CAUSE OF ACTION**
**Breach of Guaranty Against 260-261 Madison**

77.     Plaintiff repeats all of the foregoing allegations as if fully set forth herein.

78.     The payment and performance Guaranty constitutes a valid, absolute and unconditional obligation on the part of 260-261 Madison.

79.     A Change of Ownership Default under Section 3(e) of the Binding LOI occurred on March 8, 2018, which in turn constitutes a Change of Ownership Default under Section 11(a) of the Promissory Note.

80.     Because a Change of Ownership Default has occurred, the full unpaid amount of the Purchase Price under the Promissory Note is accelerated and immediately becomes due, in addition to interest and certain other amounts.

81. Under the terms of the Guaranty, Plaintiff is entitled to seek those amounts from 260-261 Madison, as guarantor.

82. On November 23, 2021, Rosen's counsel served 260-261 Madison with a notice of default in accordance with the terms of the Guaranty, seeking payment of the full outstanding amount of the Purchase Price under the Promissory Note, together with interest.

83. On December 6, 2021, counsel for 260-261 Madison refused to make the required payment under the Guaranty.

84. Rosen is entitled to judgment in the amount of $43,572,813 plus interest at a rate of 10% per annum, compounded monthly, from the date of default, which is March 8, 2018, as well as Rosen's out-of-pocket costs of collection, including but not limited to attorneys' fees and disbursements, in accordance with Sections 3 and 20 of the Guaranty.

## FOURTH CAUSE OF ACTION
### Violation of the Covenant of Good Faith and Fair Dealing Against Sapir

85. Plaintiff repeats all of the foregoing allegations as if fully set forth herein.

86. New York law implies an obligation of good faith and fair dealing into all contracts. This obligation requires that no party to a contract do anything that would destroy or injure the right of another party to receive the benefits of the contract.

87. As set forth above, publicly available information suggests a Refinancing Default has occurred, definitive proof of which is solely within the possession, custody, or control of Defendants and/or third parties.

88. Despite reasonable demand therefor, Sapir refused to produce the proof in his possession, custody, and control, while simultaneously denying that a Refinancing Default has occurred.

89. By preventing Plaintiff from obtaining definitive proof, Sapir has frustrated

Plaintiff's right to protect his interests under the agreements between Plaintiff and Defendants and, on information and belief, has acted to conceal a Refinancing Default under the Binding LOI and Promissory Note.

90. Sapir's frustration of Plaintiff's attempt to determine whether a Refinancing Default has occurred has damaged Plaintiff by delaying the acceleration of the amounts due under the Promissory Note and interest due thereon pursuant to the note's terms.

91. Sapir is liable to Plaintiff for any loss suffered by Plaintiff as a result of Sapir's breach of the covenant of good faith and fair dealing.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants and in favor of Plaintiff for the following relief:

(i) Judgment in the amount of $43,572,813 plus interest at a rate of 10% per annum, compounded monthly, from March 8, 2021, and costs of collection, including attorneys' fees and disbursements;

(ii) An order declaring that one or more events of default have occurred under the Binding LOI, Promissory Note, and Guaranty, and that Sapir and 260-261 Madison are liable to pay to Plaintiff $43,572,813, plus interest at a rate of 10% per annum, compounded monthly, from the date of default;

(iii) An order that 260-261 Madison is liable to pay to Plaintiff $43,572,813 plus interest at a rate of 10% per annum, compounded monthly, from the date of default;

(iv) An order requiring Sapir and 260-261 Madison to produce the documents requested in Rosen's letter of July 1, 2020;

(v) Damages against Sapir and 260-261 Madison in an amount to be finally determined at trial for losses suffered by Plaintiff as a result of Sapir's breach of the covenant of good faith and fair dealing;

(vi) Costs, interest, expenses, and attorneys' fees as set forth in the Promissory Note, Guaranty, and Mutual Release; and

(vii) Such other and further relief as this Court deems just and proper.

Dated: New York, New York
January 24, 2022

KASOWITZ BENSON TORRES LLP

By: */s/ Sheron Korpus*
Sheron Korpus (skorpus@kasowitz.com)
David M. Max (dmax@kasowitz.com)
1633 Broadway
New York, NY 10019
Telephone: (212) 506-1700

*Attorneys for Plaintiff Rotem Rosen*