UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROTEM ROSEN,

                  *Plaintiff/Counterclaim Defendant*,

    -against-

ALEX SAPIR AND 260-261 MADISON AVENUE
JUNIOR MEZZANINE LLC,

                *Defendants/Counterclaim Plaintiffs.*

Case No.: 1:20-cv-05844

**AMENDED ANSWER,
AFFIRMATIVE DEFENSES
AND COUNTERCLAIMS**

        Defendants Alex Sapir ("Sapir") and 260-261 Madison Avenue Junior Mezzanine LLC ("260-261 Madison") (collectively, "Defendants" or the "Sapir Parties"), by their attorneys Oved & Oved LLP, hereby submit their Amended Answer, Affirmative Defenses and Counterclaims to the Amended Complaint of Plaintiff Rotem Rosen ("Plaintiff" or "Rosen"), dated January 24, 2022 (the "Amended Complaint"), upon information and belief, as follows:

<u>**ANSWER**</u>

        The Sapir Parties deny all allegations in the Amended Complaint not expressly admitted herein.  Furthermore, the Sapir Parties deny all allegations contained in the Amended Complaint to the extent that they assert or suggest, individually or collectively, that the Sapir Parties engaged in any actionable conduct or are otherwise liable to Plaintiff.

        In addition, the Amended Complaint contains headings and subheadings.  The Sapir Parties do not admit that the Amended Complaint's headings or subheadings are accurate or appropriate for any purpose in this matter and, to the extent that any heading can be read to contain factual allegations, the Sapir Parties deny each and every one of them.

## SPECIFIC PARAGRAPHS IN THE AMENDED COMPLAINT

1.      Deny the allegations contained in paragraph 1 of the Amended Complaint, except admit that Plaintiff purports to seek the relief set forth therein for the reasons set forth therein.

2.      Deny the allegations contained in paragraph 2 of the Amended Complaint, except admit that Plaintiff purports to seek the relief set forth therein.

3.      Deny the allegations contained in paragraph 3 of the Amended Complaint, except admit that Sapir and Rosen entered into an agreement dated June 21, 2017, as amended, and refer to the document referenced in paragraph 3 of the Amended Complaint for the true and complete contents thereof.

4.      The allegations in paragraph 4 of the Amended Complaint contain conclusions of law and therefore no response is required.  To the extent, if any, a response is required, the Sapir Parties deny the allegations contained therein and refer to the documents referenced therein for the true and complete contents thereof.

5.      The allegations in paragraph 5 of the Amended Complaint contain conclusions of law and therefore no response is required.  To the extent, if any, a response is required, the Sapir Parties deny the allegations contained therein and refer to the documents referenced therein for the true and complete contents thereof.

6.      The allegations in paragraph 6 of the Amended Complaint contain conclusions of law and therefore no response is required.  To the extent, if any, a response is required, the Sapir Parties deny the allegations contained therein, except admit that Sapir executed an affidavit of judgment by confession, dated March 5, 2018, and refer to the documents referenced therein for the true and complete contents thereof.

7.      Deny the allegations contained in paragraph 7 of the Amended Complaint, except refer to the documents referenced therein for the true and complete contents thereof.

8.      Deny knowledge and information sufficient to form a belief as to the allegations contained in paragraph 8 of the Amended Complaint.

9.      The allegations in paragraph 9 of the Amended Complaint contain conclusions of law and therefore no response is required.  To the extent, if any, a response is required, the Sapir Parties deny the allegations contained therein.

10.     Deny the allegations contained in paragraph 10 of the Amended Complaint, except admit that counsel for Rosen wrote to Sapir on no fewer than three occasions, and refer to the documents referenced therein for the true and complete contents thereof.

11.     Deny the allegations contained in paragraph 11 of the Amended Complaint.

12.     Deny the allegations contained in paragraph 12 of the Amended Complaint, except refer to the document referenced therein for the true and complete contents thereof.

13.     Deny the allegations contained in paragraph 13 of the Amended Complaint, except deny knowledge and information sufficient to form a belief regarding what Rosen purportedly "wanted."

14.     Deny the allegations contained in paragraph 14 of the Amended Complaint.

15.     Deny the allegations contained in paragraph 15 of the Amended Complaint.

16.     Deny knowledge and information sufficient to form a belief as to the allegations contained in paragraph 16 of the Amended Complaint, except admit that Rosen is an individual.

17.     Admit the allegations contained in paragraph 17 of the Amended Complaint.

18.     Admit the allegations contained in paragraph 18 of the Amended Complaint.

19.     The allegations contained in paragraph 19 of the Amended Complaint contain conclusions of law, and therefore no response is required.  To the extent, if any, a response is required, the Sapir Parties deny the allegations contained therein, except admit that 260-261 Madison is a Delaware Limited Liability Company.

20.     The allegations contained in paragraph 20 of the Amended Complaint contain conclusions of law, and therefore no response is required.  To the extent, if any, a response is required, the Sapir Parties deny the allegations contained therein, except refer to the documents referenced therein for the true and complete contents thereof.

21.     The allegations contained in paragraph 21 of the Amended Complaint contain conclusions of law, and therefore no response is required.

22.     The allegations in paragraph 22 of the Amended Complaint contain conclusions of law and therefore no response is required.  To the extent, if any, a response is required, the Sapir Parties deny the allegations contained therein.

23.     Deny the allegations contained in paragraph 23 of the Amended Complaint, except admit that both Rosen and Sapir each had ownership interests in the entities referred to therein.

24.     Deny the allegations contained in paragraph 24 of the Amended Complaint, except admit that 260-261 Madison is the ultimate parent company of the entity that holds title to the real property located at 260-261 Madison Avenue in Manhattan.

25.     Deny the allegations contained in paragraph 25 of the Amended Complaint, except refer to the documents referenced therein for the true and complete contents thereof.

26.     The allegations in paragraph 26 of the Amended Complaint contain conclusions of law and therefore no response is required.  To the extent, if any, a response is required, the Sapir

Parties deny the allegations contained therein and refer to the documents referenced therein for the true and complete contents thereof.

27.     The allegations in paragraph 27 of the Amended Complaint contain conclusions of law and therefore no response is required.  To the extent, if any, a response is required, the Sapir Parties deny the allegations contained therein and refer to the document referenced therein for the true and complete contents thereof.

28.     The allegations in paragraph 28 of the Amended Complaint contain conclusions of law and therefore no response is required.  To the extent, if any, a response is required, the Sapir Parties deny the allegations contained therein and refer to the documents referenced therein for the true and complete contents thereof.

29.     Deny the allegations contained in paragraph 29 of the Amended Complaint, except deny knowledge and information sufficient to form a belief as to Rosen's "view[s]".

30.     The allegations in paragraph 30 of the Amended Complaint contain conclusions of law and therefore no response is required.  To the extent, if any, a response is required, the Sapir Parties deny the allegations contained therein and refer to the documents referenced therein for the true and complete contents thereof.

31.     The allegations in paragraph 31 of the Amended Complaint contain conclusions of law and therefore no response is required.  To the extent, if any, a response is required, the Sapir Parties deny the allegations contained therein and refer to the documents referenced therein for the true and complete contents thereof.

32.     Deny the allegations contained in paragraph 32 of the Amended Complaint.

33.     Deny the allegations contained in paragraph 33 of the Amended Complaint, except admit that prior to March 8, 2018, ASRR, LLC owned 100% of the limited non-equity, profit-sharing-only Class B interest in 260-261 Madison.

34.     Deny the allegations contained in paragraph 34 of the Amended Complaint.

35.     The allegations in paragraph 35 of the Amended Complaint contain conclusions of law and therefore no response is required.  To the extent, if any, a response is required, the Sapir Parties deny the allegations contained therein and refer to the documents referenced therein for the true and complete contents thereof.

36.     The allegations in paragraph 36 of the Amended Complaint contain conclusions of law and therefore no response is required.  To the extent, if any, a response is required, the Sapir Parties deny the allegations contained therein and refer to the documents referenced therein for the true and complete contents thereof.

37.     The allegations in paragraph 37 of the Amended Complaint contain conclusions of law and therefore no response is required.  To the extent, if any, a response is required, the Sapir Parties deny the allegations contained therein and refer to the documents referenced therein for the true and complete contents thereof.

38.     Deny the allegations contained in paragraph 38 of the Complaint, except refer to the document referenced therein for the true and complete contents thereof.

39.     Deny the allegations contained in paragraph 39 of the Complaint, except refer to the document referenced therein for the true and complete contents thereof.

40.     Deny the allegations contained in paragraph 40 of the Amended Complaint, except refer to the document referenced therein for the true and complete contents thereof.

41.    Deny the allegations contained in paragraph 41 of the Amended Complaint, except refer to the document referenced therein for the true and complete contents thereof.

42.    The allegations in paragraph 42 of the Amended Complaint contain conclusions of law and therefore no response is required.  To the extent, if any, a response is required, the Sapir Parties deny the allegations contained therein and refer to the documents referenced therein for the true and complete contents thereof.

43.    The allegations in paragraph 43 of the Amended Complaint contain conclusions of law and therefore no response is required.  To the extent, if any, a response is required, the Sapir Parties deny the allegations contained therein and refer to the documents referenced therein for the true and complete contents thereof.

44.    The allegations in paragraph 44 of the Amended Complaint contain conclusions of law and therefore no response is required.  To the extent, if any, a response is required, the Sapir Parties deny the allegations contained therein and refer to the documents referenced therein for the true and complete contents thereof.

45.    Deny knowledge and information sufficient to form a belief as to the allegations contained in paragraph 45 of the Amended Complaint, except refer to the documents referenced therein for the true and complete contents thereof.

46.    Deny the allegations contained in paragraph 46 of the Amended Complaint, except admit that counsel for Rosen sent Sapir a letter, dated July 1, 2020, and refer to that document for the true and complete contents thereof.

47.    Deny the allegations contained in paragraph 47 of the Amended Complaint, except admit that counsel for Sapir sent counsel for Rosen a letter, dated July 7, 2020, and refer to that document for the true and complete contents thereof.

48.     Deny the allegations contained in paragraph 48 of the Amended Complaint, except admit that counsel for Rosen sent counsel for Sapir a letter, dated July 10, 2020, and refer to that document for the true and complete contents thereof.

49.     Deny the allegations contained in paragraph 49 of the Amended Complaint, except admit that counsel for Sapir sent counsel for Rosen a letter, dated July 15, 2020, and refer to that document for the true and complete contents thereof.

50.     Deny the allegations contained in paragraph 50 of the Amended Complaint, except admit that counsel for Rosen sent counsel for Sapir a letter, dated July 16, 2020, and refer to that document for the true and complete contents thereof.

51.     Deny the allegations contained in paragraph 51 of the Amended Complaint, except admit that counsel for Sapir sent counsel for Rosen a letter, dated July 17, 2020, and refer to that document for the true and complete contents thereof.

52.     Deny the allegations contained in paragraph 52 of the Amended Complaint.

53.     Deny the allegations contained in paragraph 53 of the Amended Complaint.

54.     Deny the allegations contained in paragraph 54 of the Amended Complaint.

55.     Admit the allegations contained in paragraph 55 of the Amended Complaint.

56.     Deny the allegations contained in paragraph 56 of the Amended Complaint, except refer to the documents referenced therein for the true and complete contents thereof.

57.     Deny the allegations contained in paragraph 57 of the Amended Complaint.

58.     Deny the allegations contained in paragraph 58 of the Amended Complaint.

59.     Deny the allegations contained in paragraph 59 of the Amended Complaint.

60.     Deny the allegations contained in paragraph 60 of the Amended Complaint.

61.     Deny the allegations contained in paragraph 61 of the Amended Complaint, except admit that counsel for Rosen sent counsel for Sapir a letter, dated November 23, 2021, and refer to that document for the true and complete contents thereof.

62.     Deny the allegations contained in paragraph 62 of the Amended Complaint, except admit that counsel for Sapir sent counsel for Rosen a letter, dated December 6, 2021, and refer to that document for the true and complete contents thereof.

63.     Repeat and reallege each and every response to the allegations before paragraph 63 as if fully set forth herein.

64.     The allegations in paragraph 64 of the Amended Complaint contain conclusions of law and therefore no response is required.  To the extent, if any, a response is required, the Sapir Parties deny the allegations contained therein.

65.     The allegations in paragraph 65 of the Amended Complaint contain conclusions of law and therefore no response is required.  To the extent, if any, a response is required, the Sapir Parties deny the allegations contained therein.

66.     The allegations in paragraph 66 of the Amended Complaint contain conclusions of law and therefore no response is required.  To the extent, if any, a response is required, the Sapir Parties deny the allegations contained therein.

67.     Admit the allegations contained in paragraph 67 of the Amended Complaint.

68.     The allegations in paragraph 68 of the Amended Complaint contain conclusions of law and therefore no response is required.

69.     The allegations in paragraph 69 of the Amended Complaint contain conclusions of law and therefore no response is required.  To the extent, if any, a response is required, the Sapir Parties deny the allegations contained therein.

70.     Repeat and reallege each and every response to the allegations before paragraph 70 as if fully set forth herein.

71.     The allegations in paragraph 71 of the Amended Complaint contain conclusions of law and therefore no response is required.  To the extent, if any, a response is required, the Sapir Parties deny the allegations contained therein.

72.     The allegations in paragraph 72 of the Amended Complaint contain conclusions of law and therefore no response is required.  To the extent, if any, a response is required, the Sapir Parties deny the allegations contained therein.

73.     The allegations in paragraph 73 of the Amended Complaint contain conclusions of law and therefore no response is required.  To the extent, if any, a response is required, the Sapir Parties deny the allegations contained therein.

74.     Deny the allegations contained in paragraph 74 of the Amended Complaint, except admit that counsel for Rosen sent counsel for Sapir a letter, dated November 23, 2021, and refer to that document for the true and complete contents thereof.

75.     Deny the allegations contained in paragraph 75 of the Amended Complaint.

76.     The allegations in paragraph 76 of the Amended Complaint contain conclusions of law and therefore no response is required.  To the extent, if any, a response is required, the Sapir Parties deny the allegations contained therein.

77.     Repeat and reallege each and every response to the allegations before paragraph 77 as if fully set forth herein.

78.     The allegations in paragraph 78 of the Amended Complaint contain conclusions of law and therefore no response is required.  To the extent, if any, a response is required, the Sapir Parties deny the allegations contained therein.

79.     The allegations in paragraph 79 of the Amended Complaint contain conclusions of law and therefore no response is required.  To the extent, if any, a response is required, the Sapir Parties deny the allegations contained therein.

80.     The allegations in paragraph 80 of the Amended Complaint contain conclusions of law and therefore no response is required.  To the extent, if any, a response is required, the Sapir Parties deny the allegations contained therein.

81.     The allegations in paragraph 81 of the Amended Complaint contain conclusions of law and therefore no response is required.  To the extent, if any, a response is required, the Sapir Parties deny the allegations contained therein.

82.     Deny the allegations contained in paragraph 82 of the Amended Complaint, except admit that counsel for Rosen sent counsel for Sapir a letter, dated November 23, 2021, and refer to that document for the true and complete contents thereof.

83.     Deny the allegations contained in paragraph 83 of the Amended Complaint.

84.     The allegations in paragraph 84 of the Amended Complaint contain conclusions of law and therefore no response is required.  To the extent, if any, a response is required, the Sapir Parties deny the allegations contained therein.

85.     Repeat and reallege each and every response to the allegations before paragraph 85 as if fully set forth herein.

86.     The allegations in paragraph 86 of the Amended Complaint contain conclusions of law and therefore no response is required.  To the extent, if any, a response is required, the Sapir Parties deny the allegations contained therein.

87.     Deny the allegations contained in paragraph 87 of the Amended Complaint.

88.     Deny the allegations contained in paragraph 88 of the Amended Complaint.

89.     Deny the allegations contained in paragraph 89 of the Amended Complaint.

90.     Deny the allegations contained in paragraph 90 of the Amended Complaint.

91.     The allegations in paragraph 91 of the Amended Complaint contain conclusions of law and therefore no response is required.  To the extent, if any, a response is required, the Sapir Parties deny the allegations contained therein.

92.     Deny the allegations set forth in Plaintiff's Wherefore clause and deny that Plaintiff is entitled to any of the relief requested therein, or to any relief whatsoever.

93.     Deny each and every other allegation contained in the Complaint not expressly admitted in this Answer.

## AFFIRMATIVE AND OTHER DEFENSES

Without undertaking any burden of proof not otherwise assigned to it by law, the Sapir Parties assert the following affirmative and other defenses with respect to the claims asserted in the Amended Complaint.

### FIRST DEFENSE

Plaintiff fails to state a cause of action for which relief may be granted.

### SECOND DEFENSE

Plaintiff's claims are barred by Plaintiff's own breach of contract and the covenant of good faith and fair dealing.

### THIRD DEFENSE

Plaintiff's claims are barred by documentary evidence.

### FOURTH DEFENSE

Plaintiff's claims are barred by consent, authorization, approval, acquiescence, and/or ratification of the actions about which it now complains.

## FIFTH DEFENSE

Plaintiff's claims are barred by Plaintiff's bad faith, misrepresentations, frivolous and unlawful conduct, fraud, breaches of contract, and/or unclean hands.

## SIXTH DEFENSE

Plaintiff's claims are barred by the doctrines of estoppel, waiver, release, discharge, and laches.

## SEVENTH DEFENSE

Plaintiff's claims are barred by facts showing illegality by statute or common law.

## EIGTH DEFENSE

Plaintiff's claims are barred by the doctrine of unconscionability.

## NINTH DEFENSE

Plaintiff has failed to mitigate damages, if any.

## TENTH DEFENSE

Plaintiff's claims are barred by the doctrines of accord and satisfaction, election, lack of mutuality of obligation, the parole evidence rule, failure of a condition subsequent, failure of a condition precedent, novation, and mistake.

## ELEVENTH DEFENSE

The allegations set forth in Plaintiff's Complaint are without merit, false, frivolous, and retaliatory, and the Sapir Parties reserve the right to seek attorneys' fees and costs in defending these baseless claims.

## TWELFTH DEFENSE

Plaintiff's claims fail, in whole or in part, because Plaintiff suffered no damages or actual losses.

## THIRTEENTH DEFENSE

The Sapir Parties performed all duties owed under the parties' agreements, to the extent any existed, other than any duties that were prevented or excused, and therefore never breached the parties' agreements.

## FOURTEENTH DEFENSE

To the extent Plaintiff is entitled to any relief against the Sapir Parties, that relief should be offset by the damage that Plaintiff caused to the Sapir Parties.

## FIFTHTEENTH DEFENSE

The breach of contract that Plaintiff alleges is too immaterial to justify the relief Plaintiff seeks.

## SIXTEENTH DEFENSE

To the extent that Plaintiff has suffered any harm, which is denied, such harm was a direct result of Plaintiff's own negligence or conduct.

## RESERVATION OF RIGHTS

The Sapir Parties give notice that they intend to rely on any additional affirmative defenses that become available or apparent during discovery and thus reserve the right to further amend this Amended Answer to assert such additional defenses.

## COUNTERCLAIMS

The Sapir Parties, by way of counterclaims against Plaintiff,[1] allege as follows, upon information and belief:

---

[1] These Counterclaims were originally filed on October 14, 2021 and are not amended herein.  On November 4, 2021, Rosen filed a motion to dismiss the Counterclaims.  The Sapir Parties reserve any and all rights to amend the Counterclaims at a later date.

## NATURE OF COUNTERCLAIMS

1.      Sapir is President and CEO of the Sapir Organization, a family-owned organization that owns and operates a diverse, multistate real estate portfolio, founded by his now-deceased father, Tamir Sapir ("Tamir").

2.      In 2007, Rosen met and married Sapir's sister, Zina Sapir ("Zina").  After losing two jobs in two years, Rosen approached his brother-in-law, Sapir, looking for an opportunity within the Sapir Organization.  Over the next several years, Rosen exploited his newly found nepotism to gradually entrench himself deep within the Sapir Organization, starting with performing contract advisory work and ending with him holding himself out to third parties as its CEO.  During this period, Rosen collected tens of millions of dollars in compensation and eventually obtained tens of millions more by orchestrating membership and ownership interests for himself in several assets and companies, all without investing or contributing a dime of his own money.

3.      When Rosen's true intentions and motives were finally exposed, the Sapir Parties were forced to rid the Sapir Organization of Rosen's insidious entanglement in its businesses by executing various agreements to effectuate a buy-out of Rosen's interest in various Sapir Organization entities.

4.      The Sapir Parties now seek damages, attorneys' fees, and declaratory and injunctive relief arising from Rosen's blatant breaches of those agreements and for Rosen's other bad faith conduct designed to deprive to the Sapir Parties of the benefits of their bargains.

## PARTIES

5.      Sapir is a natural person who resides in Florida.  He is the President and CEO of the Sapir Organization, a group of privately-held companies majority owned and operated by members of the Sapir family.

6.      260-261 Madison is a Delaware Limited Liability Company that operates under the Sapir Organization's umbrella.

7.      Rosen is a natural person who, upon information and belief, resides at 502 Park Avenue, New York, New York 10022.

## BACKGROUND

**A.      The Sapir Organization**

8.      The Sapir Organization is a family-owned organization that owns, operates, and develops real estate, and whose multistate portfolio spans several property classes, including commercial, residential and hospitality assets in New York and Florida.

9.      The Sapir Organization's founder, Tamir, was a self-made, first-generation immigrant, who began his career in the United States as a taxicab driver.  He saw the potential in downtown Manhattan that was overlooked by others at the time and began purchasing investment properties for his family, forming Zar Realty Management in 1991 as a management and holding company.

10.      After a series of successful investments made Tamir a billionaire, he determined to build the Sapir name as a brand and began conducting business under the tradename the Sapir Organization instead of Zar Realty Management.

11.      By 2007, Sapir and Zina were co-managing the Sapir Organization alongside their father, Tamir.

**B.      Rosen Burrows Himself Even Deeper Into the Sapir Organization**

12.      Zina first met Rosen in early 2007, when the Sapir Organization was at its peak success and notoriety.  Zina and Rosen were married later that same year, 2007.

13.      In 2008, Rosen was suddenly forced to leave the employ of his then employer, Africa Israel USA under suspicious circumstances.  In 2009, after a brief stint at HFZ Capital, Rosen was terminated from there as well.

14.      In or about 2009, seeking to revive his failing career in the real estate industry, Rosen began an aggressive campaign to find himself a role within the Sapir Organization by currying favor with his brother-in-law, Sapir, claiming that he had valuable contacts in the industry and special expertise in debt restructuring.  Given that Zina had stepped back from her management role to care for her child who arrived soon after her marriage to Rosen, Sapir ultimately relented and gave Rosen a chance.  By 2010, Rosen was receiving regular payments through his company, DZR Corp., for real estate advisory services.

15.      When the Great Recession took its toll on the Sapir Organization, as it did on nearly every other real estate owner/operator in the country, Rosen seized the opportunity to entrench himself even deeper into the Sapir Organization.  He asserted opinions at every opportunity about how the family should be running its business and how Tamir should be managing his wealth and restructuring his liabilities.  Meanwhile, Rosen began proposing to Sapir that the two partner together for various real estate ventures.  Exploiting Sapir's affection for, and devotion to, his family, Rosen assured Sapir that Sapir would effectively be partnering with Zina because it would be Zina and her and Rosen's children who would ultimately reap the benefits of such arrangement due to their marriage.

16.    In June 2011, the partnership was formalized by the creation of a Sapir Organization affiliate, ASRR, LLC ("ASRR").  As Rosen requested, ASRR's operating agreement (the "Operating Agreement") reflected that each of Sapir and Rosen were 50% owners of ASRR and each were Managing Members.  However, the Operating Agreement contains the following key limitations:

   i.    Section 5.1.4.1 of the Operating Agreement, titled "Limitation on Authority of Members," provides that "No Member is an agent of the Company solely by virtue of being a Member, and no Member has authority to act for the Company solely by virtue of being a Member."

   ii.    Section 5.1.4.2 provides that "This Section 5.1 supersedes any authority granted to the Members pursuant to the Law."

   iii.    Section 5.1.2 of the Operating Agreement expressly provides that "no single Managing Member [may] make any decision or take any action that has the monetary effect of greater than $50,000.00 to [ASRR]."

   iv.    Section 5.1.3 of the Operating Agreement further expressly provides that "Any decision or action that must be taken on behalf of the Company that has an effect in excess of $50,000.00 shall be made jointly by both Managing Members."

17.    In sum, even though Rosen was granted a 50% "Managing Member" interest in ASRR, he had no authority to take any action whatsoever on behalf of ASRR by virtue of being a member, and he could not make any major decisions in ASRR without Sapir's consent, unless that action had a monetary effect to ASRR of $50,000 or less.

18.    Having achieved equal control and ownership with Sapir in their new partnership, Rosen now turned to the economics.  Rosen had no money to contribute to the partnership, which was an obstacle to making investments with Sapir and receiving 50% of the returns.  In order to work around this inconvenient reality, Rosen once again turned to manipulating and exploiting his newly acquired family.  This time, Rosen approached Sapir's father, Tamir, and convinced Tamir that Rosen's new partnership with Sapir, ASRR, should be paid additional compensation for

restructuring work that he and Sapir performed over the past two years, notwithstanding that Rosen had already been compensated for his services to the Sapir Organization through payments to his company DZR Corp.  Tamir, who ultimately planned to will his assets to his family anyway, felt no basis to object and eventually agreed.

## C.    Sapir Is Forced to End Rosen's Involvement in the Sapir Organization

19.    On September 24, 2014, Tamir passed away, leaving behind a Last Will and Testament.  By Order dated December 18, 2014, the New York County Surrogate's Court issued Preliminary Letters Testamentary to Sapir to act as executor of the Estate of Tamir Sapir (the "Estate").  The Estate is largely comprised of Tamir's interests in various entities of the Sapir Organization.

20.    Over the next few years following Tamir's death, Rosen, who at the time was still considered faithful to the Sapir Organization and family, abused his position of trust to gain inside, private, and non-public information about intra-family disputes and controversies to ultimately leverage as much money for himself, as detailed below.

21.    By 2017, without contributing even $1 of his own money to ASRR, Rosen had drawn for himself handsome profits of over $42 Million from his partnership interest in ASRR, in addition to his by-then approximately $12,000.00 weekly compensation for services rendered to Sapir Organization entities, and lavish monthly expense reimbursements.  However, this was not enough; as part of his concerted scheme to obtain total control of the Sapir Organization and unlawfully convert its assets, Rosen began systematically attempting to erase the Sapir brand and replace it with Rosen's signature "RR" brand (employed in the "ASRR" moniker) by renaming entities, making sure new entities were dubbed "ASRR" entities, and imprinting the "ASRR" brand next to the Sapir Organization brand on everything from marketing materials to the Employee

Handbook.  In fact, all Sapir Organization employees were provided with ASRR email addresses, and the email signature lines for Sapir Organization employees included both "The Sapir Organization" and "ASRR."   In addition, to further his objectives, Rosen attempted to drive wedges between family members, create issues that did not exist, and circulate lies about the people around him.

22.     By early 2017, Sapir, after becoming aware that Rosen was not the person he represented himself to be when angling for a position within the Sapir Organization, finally sought to end Rosen's involvement with the Sapir Organization.

23.     In response, Rosen shifted his strategy from one of attempting to control the Sapir Organization to now seeking to extract as much money as possible from it as the "price" for his exit.

24.     To that end, Rosen utilized various means of wrongful coercion to leverage for himself an exorbitant, unearned and undeserved buyout of $75,456,308 (the "Buyout Price") under one sided and onerous terms that were ultimately reflected in what was termed a "Binding LOI" dated June 21, 2017 and other transaction documents (the "Transaction Documents").  Under the Transaction Documents, Sapir agreed to make an initial payment of $15 million at closing, with the balance of the Buyout Price payable in equal annual installments until 2032, as reflected in a Promissory Note guaranteed by 260-261 Madison.

25.     In exchange, Rosen agreed to, *inter alia*, sign a broad mutual general release specifically designed as broadly as possible in order to permanently extricate and disentangle Rosen from Sapir and the entire Sapir Organization and prevent Rosen from extracting any more money from the Sapir family.  Otherwise, the Sapir Parties would have never agreed to Rosen's buyout demands.

26.     Under the Mutual Release, both Rosen and ASRR agreed that:

> . . . each Party hereunder, on behalf of itself/himself and, to the extent applicable and to the fullest extent permitted by law, on behalf of its/his members, principals and beneficial owners (whether direct or indirect), managers, officers employees, representatives, agents, predecessors, successors, assigns, parents, divisions, and affiliates (the "Affiliated Parties") hereby releases and discharges all other Parties and Affiliated Parties from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands, whatsoever, in law, equity or otherwise, whether known or unknown, whether foreseen or unforeseen (regardless of by whom raised), whether asserted or unasserted, whether contingent or vested, whether choate or inchoate, whether in contract, tort or otherwise, whether past, present or future, whether liquidated or unliquidated, whether fixed or unfixed, *whether direct or derivative*, whether matured or unmatured, whether suspected or unsuspected, and/or whether or not concealed, sealed, or hidden which each Party and/or Affiliated Parties ever had, now has or hereafter can, shall or may have (collectively, the "Claims"), arising out of or relating to the Assets and/or the Parties' interests therein and/or *to any Claims relating to Rosen's affiliation with any entity controlled or managed (in whole or in part) by or affiliated with Sapir*, ASRR Capital Ltd. and/or the Companies or any of the respective affiliates of each of the foregoing entities *from the beginning of the world to the day of the date of this Mutual Release.*

27.     Section 3 of the Mutual Release provides that:

> Each Party acknowledges and agrees that in the event of a dispute regarding this Mutual Release, *a Court should interpret the releases contained herein as broadly as possible*[.]

28.     The Mutual Release also specifically releases all claims that "a Party and/or Affiliated Parties hereafter may discover, incur or suffer" that were "unknown or unanticipated at the time the Party signed this Mutual Release."

29.     Section 6 of the Mutual Release further provides that:

> Each Party covenants not to sue any other Party or Affiliated Parties with respect to the Claims and Potential Claims. Each Party further agrees that this provision may be specifically enforced, and agrees

that in the event any Party breaches such covenant, ***the breaching Party shall pay the non-breaching Parties' reasonable attorneys' fees and costs***.

30.     The Mutual Release was executed by Rosen, ASRR, Sapir, and 260-261 Madison.

31.     In December 2018, Rosen and Sapir also executed a binding term sheet (the "Binding Term Sheet") to wind down and dissolve ASRR.  The only impediment to ASRR's dissolution was a liability in the form of certain loans structured to pay the premiums on Sapir and Rosen's life insurance policies, which would need to be refinanced.  Accordingly, the parties agreed in the Binding Term Sheet, "to discuss in good faith commercially reasonable terms for the dissolution of ASRR LLC (DE) and ASRR LLC (NY) and those actions and terms necessary to effectuate a $17.5 insurance loan related to RR and AS's respective life insurance trusts."

32.     Notwithstanding his express agreement to do so, Rosen subsequently refused to consent to any refinancing of the insurance loan or have any further discussion of same, thereby preventing ASRR's dissolution.  Rosen's motive for breaching his agreement to negotiate with Sapir in good faith to dissolve ASRR, as well as the fact that Rosen never had any intention of keeping this promise when he made it, became abundantly clear a mere month later, when he served Sapir with the Frivolous Claim filed "on behalf of" ASRR, described below.

**D.       Even Before the Ink on the Transaction Documents Dried, Rosen Breaches the Operating Agreement and Mutual Release**

33.     Following Sapir's decision to end his relationship with Rosen, Zina decided to file for divorce from Rosen.  Once Rosen became aware of Zina's plans to divorce him, he immediately concocted a strategy to gain as much leverage as possible against the Sapirs, maximize the cost for Zina's decision to divorce him, deprive the Sapir Parties of the benefit of the Transaction Documents, and frustrate Sapir's own ability to perform thereunder.

34.     To that end, nearly five years after Tamir had died, Rosen concocted a claim based on alleged oral promises by Sapir to Rosen, with no other witnesses, to support the filing of an entirely frivolous $102,900,000 claim against Tamir's Estate, and brought it *on behalf of ASRR*, without Sapir's knowledge or consent, as a purported derivative claim (the "Frivolous Claim").  In addition to being wholly without merit, the Frivolous Claim is expressly barred by the Mutual Release that Rosen signed in exchange for approximately $75 Million, because it plainly relates to ASRR and is based upon transactions that undisputedly concluded in 2015, three years prior to the execution of the Mutual Release.

35.     By filing the Frivolous Claim, Rosen also violated the Operating Agreement pursuant to which Rosen agreed to waive any right to act alone on behalf of ASRR by virtue of being a member, and to not take any action as manager that has an effect of over $50,000.

36.     Further underscoring the frivolity of Rosen's newly-minted claim is that at no time during the years following Tamir's death did Rosen ever mention any claim by ASRR against the Estate, despite Rosen's constant and continuous participation in countless meetings, conference calls and other communications regarding the administration of the Estate.

37.     Equally telling of Rosen's bad faith intent is that it was not until Zina began meeting with attorneys and preparing to file for divorce from Rosen that Rosen filed the Frivolous Claim against the Estate - even though the Estate had been winding up since 2014 and the transactions allegedly giving rise to Rosen's Claim were completed years earlier in 2015.  Moreover, Rosen filed the Frivolous Claim on behalf of the ASRR entity merely one month after the closing of the final unwinding transaction between him and Sapir, clearly evidencing that he never had any intention to honor his promise to negotiate in good faith for a dissolution of ASRR, but instead intended to keep the entity alive so that he could use it for his nefarious purposes.  In addition,

despite meticulously crafting his net worth statements to appear as impressive as possible, Rosen never included this so-called $103 Million receivable on any of his financial records.

38.     On or about May 17, 2019, the Estate filed a Petition in Surrogate's Court, for an order, *inter alia*, disallowing the Frivolous Claim (the "Petition").

39.     By design, the Frivolous Claim afforded Rosen the appearance of standing, which he then used to file entirely baseless counterclaims against Sapir seeking an accounting of the Estate and the removal of Sapir as the Preliminary Executor.

40.     Knowing that Sapir would rely on the assets to which Sapir was entitled from his late father's Estate to continue operating the Sapir Organization, Rosen filed the Frivolous Claim and frivolous counterclaims to tie the Estate's assets up in litigation, injure the Sapir Organization and frustrate Sapir's ability to make the annual installment payments due under the Transactions Documents, so that Rosen could accelerate the Buyout Price and obtain a further windfall.

41.     Rosen also filed the Frivolous Claim to create a platform designed, in part, to insulate himself from defamation claims arising from his ongoing and public smearing of the Sapir Organization and the Sapir family.

42.     Indeed, Rosen's counterclaims are rife with allegations that the Sapir Organization suffered financial setbacks due to mismanagement rather than the recession, and contain references to old, long-resolved Sapir family controversies designed to stir up animosity among the Estate's beneficiaries and damage their good names and reputations.  The counterclaims rely, in large part, on corruptions of the information that the Rosen gained under the guise of being a trustworthy agent of the Sapir Organization.

43.     For example, Rosen utilized confidential documents concerning a long-resolved dispute between Sapir and his aunt, Rozita Sapir, regarding his father's Estate, which Rosen placed

out of context to support his spurious counterclaims against Sapir, as Preliminary Executor of his father's Estate.

44.     The Estate has moved for summary judgment to dismiss the Frivolous Claim.  By ordered dated March 9, 2021, the Surrogate's Court continued the motion to allow for certain discovery certain issues, after which the parties have been ordered to submit supplemental briefs.

45.     While the Estate expects the Frivolous Claim to be dismissed on summary judgment, the damage Rosen intended to cause to the Sapir Organization and family by his breaches of the Mutual Release, the Operating Agreement and the Binding Term Sheet in filing the Frivolous Claim has already been significant.  Those damages include, but are not limited to, the significant attorneys' fees incurred in defending the Frivolous Claim, which are expressly recoverable under the Mutual Release, and those incurred from Rosen's obstructing the timely distribution of the Estate's assets.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of the Mutual Release)

46.     The Sapir Parties repeat, reiterate and re-allege each and every allegation contained in the above paragraphs as if fully set forth herein.

47.     As set forth above, on March 8, 2018, the Sapir Parties and Rosen executed the Mutual Release.

48.     The Mutual Release is a valid and enforceable contract.

49.     The Sapir Parties have and continue to faithfully perform their obligations under the Mutual Release.

50.     Rosen breached the Mutual Release by the conduct more fully described above.

51.     As a result of Rosen's breach, the Sapir Parties were damaged in an amount to be determined at trial, plus attorneys' fees, costs and expenses.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of the Operating Agreement)

52.     The Sapir Parties repeat, reiterate and re-allege each and every allegation contained in the above paragraphs as if fully set forth herein.

53.     As set forth above, on June 7, 2011, Sapir and Rosen executed the Operating Agreement.

54.     The Operating Agreement is a valid and enforceable contract.

55.     Sapir faithfully performed his obligations under the Operating Agreement.

56.     Rosen breached the Operating Agreement by the conduct more fully described above.

57.     As a result of Rosen's breach, Sapir was damaged in an amount to be determined at trial, plus attorneys' fees, costs and expenses.

58.     In addition, Sapir is entitled to an order permanently restraining Rosen from taking any action, including, but not limited to, the filing of any purported derivative claims on behalf of ASRR, without the express written consent of Sapir.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Breach of Contract of the Binding Term Sheet)

59.     The Sapir Parties repeat, reiterate and re-allege each and every allegation contained in the above paragraphs as if fully set forth herein.

60.     As set forth above, Sapir and Rosen entered into the Binding Term Sheet.

61.     The Binding Term Sheet is a valid and enforceable contract.

62.     Sapir faithfully performed his obligations under the Binding Term Sheet.

63.     Rosen breached the Binding Term Sheet by the conduct more fully described above.

64.     Rosen's breaches of the Binding Term Sheet have caused irreparable harm for which no adequate remedy at law exists.

65.     Accordingly, Sapir is entitled to specific performance of the Binding Term Sheet or, in the alternative, damages incurred as a result of Rosen's breach thereof, in an amount to be determined at trial.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**(Breach of the Covenant of Good Faith and Fair Dealing)**

66.     The Sapir Parties repeat, reiterate and re-allege each and every allegation contained in the above paragraphs as if fully set forth herein.

67.     Implied in every contract is a covenant of good faith and fair dealing, which imposed upon Rosen a duty of good faith and fair dealing and which required that Rosen not do anything to deprive Sapir of the benefit of their contracts, including the Transaction Documents and Binding Term Sheet.

68.     Rosen breached the covenant of good faith and fair dealing by virtue of the conduct detailed more fully above.

69.     By Rosen's failure to dutifully perform his obligations to Sapir as set forth more fully above, Rosen has deprived Sapir of the benefit of and consideration for which Sapir bargained.

70.     Rosen's continuing breaches of his duty of good faith and fair dealing arising out of his contracts with Sapir have proximately caused and continue to proximately cause damage to Sapir, in an amount to be proven at the trial.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**(Declaratory Judgment)**

71.     The Sapir Parties repeat, reiterate and re-allege each and every allegation contained in the above paragraphs as if fully set forth herein.

72.     As set forth above, Rosen breached the Mutual Release and his covenant of good faith and fair dealing with respect to the Transaction Documents by filing the Frivolous Claim with the bad faith intention of, *inter alia*, tying up the Estate's assets in litigation, thereby frustrating Sapir's ability to make the annual installment payments required under the Transactions Documents, all so that Rosen could accelerate the Buyout Price and obtain a further undeserved windfall.

73.     The Mutual Release is a material term of the Transaction Documents, without which Sapir would never have agreed to the Buyout Price or to make the annual installment payments thereof.

74.     Accordingly, a justiciable and actual controversy exists between Sapir and Rosen as to whether Sapir should be excused from making any further installment payments under the Transaction Documents or, alternatively, whether such installment payments should be suspended while the Frivolous Claim remains pending in Surrogate's Court, improperly tying up the Sapir family's rightful inheritance as bequeathed to them in the written and witnessed Last Will and Testament of their late father, Tamir.

75.     Sapir is entitled to a judgment declaring that Rosen breached the Mutual Release, as well as his covenant of good faith and fair dealing, and that because of such breach Sapir is thereby excused from making any additional payments to Rosen under the Transaction Documents. Alternatively, Sapir is entitled to a judgment declaring that his obligation to make installment payments under the Transaction Documents is suspended while the Frivolous Claim remains pending.

## PRAYER FOR RELIEF

**WHEREFORE**, the Sapir Parties respectfully request a judgment in their favor and against

Rosen granting them following relief:

(i)     Dismissal of the Complaint in its entirety with prejudice;

(ii)    Damages in an amount to be determined at trial of no less than $80,000,000.00;

(iii)   The Sapir Parties' reasonable attorneys' fees incurred in this action;

(iv)    Specific performance of the Binding Term Sheet;

(v)     A permanent injunction restraining Rosen from taking any action, including, but not limited to, the filing of any purported derivative claims, on behalf of ASRR, without the express written consent of Sapir, and/or his heirs, successors and assigns;

(vi)    A declaration that Rosen is in material breach of the Transaction Documents and excusing Sapir from further performing thereunder;

(vii)   Costs and disbursements incurred in this suit;

(viii)  Pre- and post-judgment interest; and

(ix)    Any other and further relief the Court deems just and proper.

Dated: New York, New York
       February 24, 2022

/s/ Andrew J. Urgenson
Terrence A. Oved, Esq.
Darren Oved, Esq.
Andrew J. Urgenson, Esq.
James Reilly, Esq.
OVED & OVED LLP
*Attorneys for Defendants/*
*Counterclaim Plaintiffs*
401 Greenwich Street
New York, NY 10013
Tel:  212.226.2376